IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

No. 14-0059

FILED

June 6, 2014

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA ex rel. THORNHILL
GROUP, INC. and WALLY L. THORNHILL,
Petitioners

v.

CHARLES E. KING, JR., Judge of the Circuit Court of Kanawha County
and GEORGE A. ROBERTS,
Respondent

PETITION FOR WRIT OF PROHIBITION

WRIT GRANTED

Submitted:  April 22, 2014
Filed: June 6, 2014

Johnnie E. Brown, Esq.
S. Andrew Stonestreet, Esq.
Pullin, Fowler, Flanagan,
 Brown & Poe, PLLC
Charleston, West Virginia
Attorneys for Petitioners

Harry F. Bell, Jr., Esq.
Jonathan W. Price, Esq.
The Bell Law Firm, PLLC
Charleston, West Virginia
Attorneys for Respondent Roberts

JUSTICE LOUGHRY delivered the Opinion of the Court.
JUSTICE KETCHUM concurs and reserves the right to file a concurring opinion.

SYLLABUS

1.  The holding in syllabus point three of *Wetzel County Savings & Loan Co. v. Stern Bros., Inc.,* 156 W.Va. 693, 195 S.E.2d 732 (1973), and its progeny, which identifies the place where a cause of action arises in a breach of contract claim for purposes of venue selection based on the tripartite aspects of a contractual claim (formation, breach, and damages), was not impacted by the repeal of West Virginia Code § 56-1-2 in 1986.

2.  "Courts of record can speak only by their records, and what does not so appear does not exist in law."  Syl. Pt. 3, *Hudgins v. Crowder and Freeman, Inc.,* 156 W.Va. 111, 191 S.E.2d 443 (1972).

LOUGHRY, Justice:

Petitioners Thornhill Group, Inc. ("Thornhill Group") and Wally L. Thornhill seek a writ of prohibition in connection with the December 16, 2013, ruling of the Circuit Court of Kanawha County denying their motion to dismiss for improper venue. Given that the petitioners–defendants below–are either residents of or have their principal place of business in Logan County and all the relevant factual events alleged by respondent George A. Roberts in support of the underlying cause of action transpired in Logan County, the petitioners argue that the provisions of our general venue statute[1] dictate that venue is proper in Logan County. After a careful review of the applicable venue statute in conjunction with controlling case law, we conclude that the trial court committed error in ruling that venue lies properly in Kanawha County.[2] Accordingly, we grant the requested writ of prohibition.

## I. Factual and Procedural Background

On or about December 11, 2006, Mr. Roberts began working as a general manager for the Thornhill Group at its automotive dealership in Logan County.[3] In the Spring of 2011, Mr. Roberts learned of the Thornhill Group's alleged decision to replace him

---

[1]*See* W.Va. Code § 56-1-1 (2012).

[2]George A. Roberts, the plaintiff below and individual respondent herein, is a resident of Kanawha County.

[3]The Thornhill Group owns multiple automobile dealerships.

1

with a younger employee.[4] Through a complaint filed on February 11, 2013, in the Circuit Court of Kanawha County, Mr. Roberts asserted claims against the petitioners predicated on breach of contract, age discrimination, unlawful retaliation,[5] and unpaid wages. The petitioners promptly filed a motion to dismiss asserting that Kanawha County is not the proper venue for the underlying cause of action based on the provisions of the general venue statute.[6] Addressing Mr. Roberts' allegation that a Kanawha County venue is supported by case law which recognizes a three-pronged consideration for selection of venue in breach of contract cases,[7] the petitioners argued that not only was the alleged offer of employment accepted at the dealership located in Logan County, but all of the events related to an alleged breach of contract similarly took place in Logan County. The petitioners also question the validity of the decisional law relied upon by Mr. Roberts in light of the repeal of West

[4]When the complaint was filed, Mr. Roberts was sixty-four years old.

[5]According to the allegations set forth in the complaint, various retaliatory acts allegedly ensued after Mr. Roberts notified the petitioners on December 17, 2012, that they were unlawfully discriminating against him by grooming a younger employee to replace him.

[6]*See* W.Va. Code § 56-1-1 (2012).

[7]In his complaint, Mr. Roberts relied upon this Court's holding in syllabus point three of *Wetzel County Savings & Loan Co. v. Stern Bros., Inc.,* 156 W.Va. 693, 195 S.E.2d 732 (1973), that

> [t]he venue of a cause of action in a case involving breach of contract in West Virginia arises within the county: (1) in which the contract was made, that is, where the duty came into existence; or (2) in which the breach or violation of the duty occurs; or (3) in which the manifestation of the breach–substantial damage occurs.

2

Virginia Code § 56-1-2 in 1986.[8]  The petitioners assert that no fair or reasonable reading of the venue statute at issue would support venue existing in Kanawha County.

In denying the petitioners' motion to dismiss on improper venue grounds, the trial court ruled that venue was appropriate in Kanawha County based on the alleged acceptance by Mr. Roberts of an offer of employment from the Thornhill Group in Kanawha County.[9]  As an additional basis for its ruling, the trial court relied upon Mr. Roberts' Kanawha County residency at the time of the alleged breach of contract and the fact that "his damages would be most acutely felt there."[10]  With regard to the non-contractual claims,[11] the trial court concluded that judicial economy dictated they be similarly heard in Kanawha County.  It is from this ruling that the petitioners seek relief.

---

[8]*See infra* note 16 for text of former West Virginia Code § 56-1-2.

[9]While Mr. Roberts contends that he accepted a verbal offer of employment over the telephone while in his residence in Kanawha County, the record of this case is devoid of any evidence to support that contention.

[10]Three additional factors that the trial court cited in support of its ruling included: (1) the fact, of which it took judicial notice, that "the Thornhill Group advertises extensively in Kanawha County via both print and broadcast media;" (2) the Thornhill Group's operation of a dealership  in Kanawha County, and (3) the likely recusal of the two sitting circuit court judges in Logan County based on their prior actions in suits involving the petitioners.

[11]The petitioners are adamant that no employment contract exists.  Instead, Mr. Roberts was an at-will employee.

## II. Standard of Review

That the issue of venue may properly be addressed through a writ of prohibition is well-settled. In *State ex rel. Riffle v. Ranson*, 195 W.Va. 121, 464 S.E.2d 763 (1995), we explained our preference for "resolving this issue [venue] in an original action" given the "inadequacy of the relief permitted by appeal." *Id.* at 124, 464 S.E.2d at 766; *accord State ex rel. Huffman v. Stephens*, 206 W.Va. 501, 503, 526 S.E.2d 23, 25 (1999) (recognizing that concerns regarding litigants being placed at unwarranted disadvantage and inadequate appellate relief compel exercise of original jurisdiction in venue matters). In deciding whether to grant a writ of prohibition in cases where the lower court is acting within its jurisdiction but alleged to have exceeded its authority, we rely upon those now axiomatic factors set forth in syllabus point four of *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).[12] We proceed to determine whether a writ of prohibition should issue.

---

[12]Those factors are:

(1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression.

4

## III. Discussion

The parties agree that the singular issue of venue before us is controlled by the provisions of West Virginia Code § 56-1-1 (2012). Under that statute, which is referred to as the general venue statute, venue is determined by examining the following factors pertinent to this case:

> (a) Any civil action or other proceeding, except where it is otherwise specially provided, may hereafter be brought in the circuit court of any county:
> (1) *Wherein any of the defendants may reside or the cause of action arose*, . . .;  or
> (2) If a corporation be a defendant, wherein its principal office is or wherein its mayor, president or other chief officer resides
> . . . .

*Id.* (emphasis supplied).

According to the petitioners, the residency factors set forth in subsections (a)(1) and (2) of our general venue statute require the conclusion that Logan County is the proper county in which to resolve the underlying action. *See* W.Va. Code § 56-1-1(a)(1), (2). As both the individual and corporate defendant have their residences, for purposes of the general venue statute, in Logan County, the petitioners maintain that venue does not lie in Kanawha County. Looking to the alternate statutory basis for venue, the place where the cause of action arose, the petitioners contend that all the facts upon which Mr. Roberts relies in support of his cause of action occurred in Logan County at the dealership where he was employed. As a result, the petitioners insist that the clear and unambiguous language of West

5

Virginia Code § 56-1-1(a) compels the conclusion that venue properly lies in Logan County, and not in Kanawha County.

Eschewing any discussion of the defendants' residency, Mr. Roberts relies instead on his residency in Kanawha County combined with his alleged acceptance of an offer of employment from the Thornhill Group in Kanawha County.[13] Adopting the circuit court's reasoning in its order denying the motion to dismiss, Mr. Roberts suggests that the damages incurred from the breach of contract "would be most acutely felt in the county in which he makes his home." In response to the petitioners' contention that the case law he relied upon to assert venue, *Wetzel County Savings & Loan,* is no longer valid, Mr. Roberts cites to multiple decisions of this Court which continue to view the holding of that decision as authoritative. *See, e.g., State ex rel. Galloway Group v. McGraw*, 227 W.Va. 435, 711 S.E.2d 257 (2011) (recognizing three-pronged analysis announced in *Wetzel County Savings & Loan* for venue in breach of contract cases);[14] *McGuire v. Fitzsimmons*, 197 W.Va. 132, 136-37, 475 S.E.2d 132, 136-37 (1996) (applying venue analysis of *Wetzel County Savings & Loan* to legal malpractice action); *Banner Printing Co. v. Bykota Corp.*, 182 W.Va. 488, 491-92, 388 S.E.2d 844, 847-48 (1989) (discussing 1986 amendments to venue statutes and applying *Wetzel County Savings & Loan* holding to determine venue).

---

[13]*See supra* note 9.

[14]*See supra* note 7.

Turning to the residency requirements set forth in the general venue statute, it is clear that venue lies in Logan County. *See* W.Va. Code § 56-1-1(a)(1), (2). The individual defendant in this case, Wally Thornhill, resides in Logan County. Mr. Thornhill serves as the president and chief officer of the Thornhill Group and the principal office of the Thornhill Group is in Logan County. Although the residency of the defendants clearly points to Logan County for venue purposes, the general venue statute provides an alternate basis for determining venue that must be considered: where the cause of action arose. W.Va. Code § 56-1-1(a)(1).

As part of our consideration of where Mr. Roberts' cause of action arose, we find it necessary to address the petitioners' contention that the trial court relied on case law that is no longer valid. In making its ruling in this case, the circuit court considered whether the repeal of West Virginia Code § 56-1-2 in 1986 compels the conclusion that the legal principles announced in *Wetzel County Savings & Loan,* a case applying that statute, had been rendered nugatory.[15] In rejecting the postulate that this Court's recognition of multiple venues for a breach of contract case was effectively abrogated by the statutory repeal, the trial court reasoned:

> the West Virginia Supreme Court has applied the same reasoning subsequent to repeal of that statute, recognizing that the divisible and transitory nature of contracts means that venue

---

[15]*See supra* note 7.

7

may be appropriate in more than one county. *McGuire v. Fitzsimmons*, 197 W.Va. 132, 136-37, 475 S.E.2d 132, 136-137 (1996);

6. Further, the <u>McGuire</u> court observed that "[t]he plain language of W.Va. Code, 56-1-1(a)(1) [1986] does not limit the venue to one county, but provides at least two possible justifications for proper venue, either the residence of the defendants or where the 'cause of action arose.'" *Id.* at 136, [475 S.E.2d at] 136.

The petitioners' suggestion that the repeal of West Virginia Code § 56-1-2 invalidates this Court's case law addressing the issue of where a cause of action arises in a contract case fails upon scrutiny. Of critical import is the fact that while West Virginia Code § 56-1-2 no longer exists in its original format,[16] the core provisions of that section have been incorporated into West Virginia Code § 56-1-1. In discussing the subject statutory changes in *Banner Printing*, we stated:

---

[16]That statute provided as follows:

An action, suit or proceeding may be brought in any county wherein the cause of action, or any part thereof, arose, although none of the defendants reside therein, in the following instances:

(a) When the defendant, or if more than one defendant, one or more of the defendants, is a corporation;

(b) When the defendant, or if more than one defendant, one or more of the defendants, are served in such county with process or notice commencing such action, suit or proceeding.

W.Va. Code § 56-1-2 (repealed 1986).

8

*This statutory enactment [W.Va. Code, 56-1-1], which became effective in 1986, consolidated and slightly modified two previous venue statutes*, W.Va. Code, 56-1-1 [1927], and *W.Va. Code*, 56-1-2[1927].

West Virginia Code, 56-1-1, as in effect prior to the 1986 amendments, provided for venue based on the location of the defendant . . . .

. . . .

The former *W.Va. Code*, 56-1-2, unlike the former *W.Va. Code*, 56-1-1, provided for venue under certain circumstances in the county where the cause of action arose . . . .

As previously indicated, after the 1986 amendments, it was provided in *W.Va. Code*, 56-1-1, that, except where otherwise specifically provided, a cause of action could be brought in any county, "(1) Wherein any of the defendants reside or the cause of action arose."

182 W.Va. at 490, 388 S.E.2d at 846 (emphasis supplied).

Rather than discarding established common law principles of venue concerning where the cause of action arose, we explained in *Banner Printing* that "this Court believes that the new *W.Va. Code*, 56-1-1(a)(2), was intended to amplify upon the language of the former *W.Va. Code*, 56-1-1, which dealt with venue based on the location of the defendant *and was not intended to affect venue based on where the cause of action arose*." 182 W.Va. at 491, 388 S.E.2d at 847 (emphasis supplied). After first resolving that the 1986 amendments to West Virginia Code § 56-1-1 allow an action to be brought in the county in which the action arose when a corporate defendant has been sued *in addition to* the

"residency" locations specified in subsection (a)(2),[17] we proceeded to consider whether the amended language had any effect on this Court's precedent with regard to where a cause of action arises. With specific reference to the rulings reached in *Wetzel County Savings & Loan,*[18] this Court opined that the new statute [56-1-1] did not alter the law as it relates to where a cause of action arises. *Banner Printing*, 182 W.Va. at 492, 388 S.E.2d at 848. Affirming the continued validity of our decisional law addressing where a cause of action arises in a breach of contract case, we relied on syllabus point four of *Wetzel County Savings & Loan*[19] to reverse the trial court's decision that "venue is placed in the circuit court of the

---

[17]Subsection (a)(2) provides in its entirety:

> If a corporation be a defendant, wherein its principal office is or wherein its mayor, president or other chief officer resides; or if its principal office be not in this State, and its mayor, president or other chief officer do not reside therein, wherein it does business; or if it be a corporation organized under the laws of this State which has its principal office located outside of this State and which has no office or place of business within the State, the circuit court of the county in which the plaintiff resides or the circuit court of the county in which the seat of state government is located shall have jurisdiction of all actions at law or suits in equity against the corporation, where the cause of action arose in this State or grew out of the rights of stockholders with respect to corporate management[.]

W.Va. Code § 56-1-1(a)(2).

[18]*See supra* note 7.

[19]Syllabus point four of *Wetzel County Savings & Loan* provides as follows:

> Where one supports the venue for his civil action based

10

county wherein the cause of action arose *only if* the corporation does not have a principal office or its chief officer does not reside in this State." 182 W.Va. at 489, 388 S.E.2d at 845 (emphasis supplied).

With our ruling in *Banner Printing*, this Court resolved more than two decades ago that, subsequent to the 1986 amendments to the general venue statute, our case law addressing the issue of where a cause of action arises continues to be controlling law. To avoid any further confusion on this issue, however, we conclude that the holding in *Wetzel County Savings & Loan* and its progeny, which identifies the place where the cause of action arises in a breach of contract claim for purposes of venue selection based on the tripartite aspects of a contractual claim (formation, breach, and damages), was not impacted by the repeal of West Virginia Code § 56-1-2 in 1986. We recognize, however, that the facts

upon the *place of the breach* comprising a part of the cause of action, in the usual case, he must bring the action in the place or county in the State where the breach, repudiation or violation of the duty occurs. But a well recognized exception to the above rule is the "to pay" doctrine providing: where the duty imposed is to pay a *debt*, the courts construe the contract and the law implies a further duty upon the debtor after default, to seek the creditor and make payment to him and declares that the residence of the creditor at the time the debt is due is the place of the breach of the contract.

156 W.Va. at 694, 195 S.E.2d at 734.

relevant to a particular breach of contract claim will govern which of those three potential

venue selections are appropriate in a given case.[20]


Prior recognition of the legislative purpose for the 1986 amendments to our

venue laws further supports the conclusion we reach in this case. Addressing the addition

of language to West Virginia Code § 56-1-1 that allows a defendant to seek a transfer when

the cause of action is filed in a county in which he does not reside, Justice Cleckley opined:

> By enacting W.Va. Code, 56-1-1(b),[21] the legislature
> granted to the circuit courts of this State broader discretion than
> was permissible under the old rule of *forum non conveniens*.
> Thus, in effect, it gave the circuit court some discretion to

---

[20]In illustration, the fact that Mr. Roberts sought to assert venue in Kanawha County based primarily on his alleged acceptance of an oral contract of employment via the telephone from his residence has no bearing on the allegations relevant to the breach of contract–all of which clearly point to Logan County as the proper venue in this case.

[21]That section provides:

> Whenever a civil action or proceeding is brought in the county where the cause of action arose under the provisions of subsection (a) of this section, if no defendant resides in the county, a defendant to the action or proceeding may move the court before which the action is pending for a change of venue to a county where one or more of the defendants resides and upon a showing by the moving defendant that the county to which the proposed change of venue would be made would better afford convenience to the parties litigant and the witnesses likely to be called, and if the ends of justice would be better served by the change of venue, the court may grant the motion.

W.Va. Code § 56-1-1(b).

> decide the choice of forum, a prerogative which previously was placed in the hands of the plaintiff. Under W.Va. Code, 56-1-1(b), the "plaintiff's choice [of forum] is no longer the dominant factor that it was prior to [the] adoption of [this section]."

*State ex rel. Smith v. Maynard*, 193 W.Va. 1, 7, 454 S.E.2d 46, 52 (1994) (footnoted added and citation omitted). Justice Cleckley elicited further that the legislative changes came in response to our ruling in *Hinkle v. Black,*[22] with the aim of revising "this Court's formulation of the *forum non conveniens* doctrine."[23] *Id.* at 9, 454 S.E.2d at 54. Under subsection (b), defendants who do not reside in the county in which a plaintiff has filed a cause of action were provided with a procedural mechanism by which to seek transfer of that action to a county where one or more defendants resides in the interests of convenience and serving the ends of justice.[24] *See* W.Va. Code § 56-1-1(b).

---

[22]164 W.Va. 112, 262 S.E.2d 744 (1979).

[23]In *Riffle*, Justice Cleckley expounded on this issue, stating

> Before the 1986 revisions, our application of the doctrine of *forum non conveniens* struck directly at venue choices authorized by the Legislature. In other words, it gave the circuit courts authority to disregard the venue statutes that limited venue to certain counties and permitted transfers to another county based upon the circuit court's determination that it would be more convenient and just to transfer the case.

195 W.Va. at 127 n.9, 464 S.E.2d at 769 n.9.

[24]As we discussed in *Maynard,* the transfer provisions only apply where the plaintiff has filed the action in the county in which the cause of action arose. 193 W.Va. at 7, 454 S.E.2d at 52. From the record of this case, it does not appear that the petitioners ever sought to transfer this matter, but only to dismiss it on grounds of improper venue.

Returning to the case before us, we proceed to analyze the trial court's decision that venue was proper in Kanawha County based on the residency of Mr. Roberts; his situs when accepting the employment contract; and the location where damages from the alleged breach would be most acutely realized. Under the provisions of our general venue statute, the place of the plaintiff's residency has no independent bearing on where an action may be maintained. *See* Syl. Pt. 2, *Crawford v. Carson*, 138 W.Va. 852, 78 S.E.2d 268 (1953) (recognizing that plaintiff's residence, without more, does not establish venue in absence of statute or other principle of law); *accord Crispen v. W.Va. Secondary Schools Activities Comm'n*, 206 W.Va. 486, 525 S.E.2d 677 (1999). Only two statutory factors control the issue of venue before us: the place of the defendants' residence and the place where the cause of action arose. *See* W.Va. Code § 56-1-1(a). Because there is no dispute that both the individual and the corporate defendants reside in Logan County for purposes of our general venue statute, the only way this case can remain in Kanawha County is if the cause of action arose there.

In support of its ruling that venue lies in Kanawha County, the trial court concludes that Mr. Roberts accepted an offer of employment from the Thornhill Group in Kanawha County. The record of this case, however, is devoid of any evidence in support of this finding. Not only does the complaint fail to refer to where the oral contract was formed, but no supporting evidence has been submitted on this issue. As we recognized in syllabus

14

point three of *Hudgins v. Crowder & Freeman, Inc.,* 156 W.Va. 111, 191 S.E.2d 443 (1972), "[c]ourts of record can speak only by their records, and what does not so appear does not exist in law." There is simply no evidence in the record of this case to establish that Mr. Roberts accepted his offer of employment, as was represented during oral argument of this case, while utilizing the telephone in his home.

Although we have no basis from which to assess whether an offer of employment was accepted in Kanawha County,[25] the location of the contract's acceptance has no bearing on where the subject cause of action arose in this case. *See* Syl. Pt. 1, *Jones v. Main Island Creek Coal Co.*, 84 W.Va. 245, 99 S.E. 462 (1919) (recognizing that cause of action consists of duty owing to one person from another combined with violation or breach of that duty). Rather than the existence of the contract itself being the pivotal focus of Mr. Roberts' contractual claim, his claim is predicated on the alleged breach of that contract. Accordingly, for purposes of determining venue in the case before us, what is relevant is where the breach of contract ensued and not where the contract was accepted.

By focusing on the location of the alleged contract's acceptance, the trial court overlooked the critical need to determine where the cause of action arose when deciding

---

[25]The petitioners maintain that the offer of employment was made and accepted at the dealership in Logan County.

where venue lies. *See* W.Va. Code § 56-1-1(a)(1). In view of both the transitory nature of contracts as well as the potential involvement of multiple geographic locations, we recognized in *Wetzel County Savings & Loan* that the place of the contract's formation may sometimes govern where venue lies. 156 W.Va. at 698, 195 S.E.2d at 736. Typically, however, the situs of the breach of a contract will be the obvious location in which to institute an action to recover for that breach. *See Russell v. Pineview Realty, Inc.*, 165 W.Va. 822, 824-25, 272 S.E.2d 241, 242-43 (1980) (examining contractual terms to conclude that Kanawha County was place of breach and, correspondingly, proper situs of venue). The third possible location for a breach of contract action is the location where the breach manifests itself and damages are made evident from that breach. It is not, as the trial court ruled, a reference to the physical locale in which a plaintiff's monetary harm is most acutely felt.[26] In many instances, this location will be the same location as the breach. As we recognized in *Wetzel County Savings & Loan*, however, the county where the damages occur may be a distinct location from the county in which the breach occurred. 156 W.Va. at 698, 195 S.E.2d at 736.

---

[26]There is simply no basis in the law for identifying a plaintiff's residence as the location where substantial damage occurs based on a perceived reduction in the flow of income to that county as a result of the contractual breach. Critically, the place where the damages are made manifest is not the location of the plaintiff's wallet or pocketbook but instead the physical locale where the damages flowing from the breach are first made evident.

Looking at the nature of the alleged breach of contract in this case, Mr. Roberts is asserting that the breach occurred by "materially and unilaterally altering the terms under which [he] was employed." In support of this claim, Mr. Roberts alleges that the petitioners "manipulat[ed] dealership sales figures in a calculated effort to deprive Plaintiff of compensation he should have received based on his employment agreement." Assuming, *arguendo*, the truth of this averment regarding sales figure manipulation aimed at reducing Mr. Roberts' income, the situs of the contractual breach would have been Logan County where the dealership was located. Not only was Logan County the location of the alleged breach of the employment contract but it was also the location where the damages resulting from the alleged breach of contract would have manifested. Upon application of the general venue statute provisions to this case, there is a complete convergence of result: Logan County is the place where the cause of action for an alleged breach of contract arose.[27] *See* W.Va. Code § 56-1-1.

**IV. Conclusion**

Given the fact that West Virginia Code § 56-1-1 prescribes that a civil action shall be brought where the individual defendants reside, where a corporate defendant has a principal place of business, or where the cause of action arose, and given the facts of the

___

[27]Each of the three additional causes of action Mr. Roberts has alleged against the petitioners (age discrimination, unlawful retaliation, and unpaid wages) would have similarly arisen in Logan County.

present case, this Court can only conclude that the trial court erred in ruling that venue lies in Kanawha County.  Based upon the foregoing, we grant the writ of prohibition.

Writ granted.